# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DAVID HAMILTON (#108298)**                        **CIVIL ACTION**

**VERSUS**

                                                                                  **19-88-JWD-RLB**

**JOSEPH SMITH, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 2, 2019.

                                                                **RICHARD L. BOURGEOIS, JR.**
                                                                **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAVID HAMILTON (#108298)                                          CIVIL ACTION

VERSUS

JOSEPH SMITH, ET AL.                                              19-88-JWD-RLB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Motion to Dismiss filed on behalf of defendant Thomas Sterling (R. Doc. 16). The motion is opposed. *See* R. Doc. 23.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Joseph Smith, Kevin Benjamin, and Thomas Sterling complaining that his constitutional rights were violated due to the defendants' failure to protect him from harm.

Defendant Sterling asserts, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that on February 24, 2018 he was awakened, at 2:00 a.m., by defendants Sterling and Smith in order to place another inmate in his cell. The plaintiff recognized inmate Johnson and informed defendants Sterling and Smith that they could not be bunked together due to a prior human waste fight. Defendant Smith stated that was no record of the fight on the plaintiff's or inmate Johnson's enemy list. The plaintiff and inmate Johnson then informed defendants Sterling and Smith that the human waste fight was unobserved by prison officials. Defendant Sterling stated in response that he did not transport inmate Johnson to administrative segregation for nothing and that Johnson was going to be placed in the plaintiff's cell.

The plaintiff informed defendants Sterling and Smith that he could not be bunked with another inmate because he was backlogged for a single man cell in extended lockdown due to a disciplinary infraction. Both the plaintiff and inmate Johnson again informed defendants Sterling and Smith that they could not bunk together without getting into a fight. Defendant Smith informed the plaintiff that double bunking of extended lockdown inmates had been authorized by defendant Benjamin.

The plaintiff then informed defendants Sterling and Smith that he could not be bunked with inmate Johnson because inmate Johnson was a mental health inmate. Defendant Smith then ordered for the plaintiff's cell door to be opened and plaintiff attempted to prevent inmate Johnson from entering. The plaintiff again informed defendants Sterling and Smith that inmate Johnson was mental health inmate who cut himself with razor blades and needed to be on the mental health tier. Defendant Sterling responding by stated that he was not bringing inmate Johnson anywhere else and instructed the plaintiff to "get the f#$% out of the way."

The plaintiff moved and inmate Johnson entered the cell, but the plaintiff refused to allow inmate Johnson's restraints to be removed and repeatedly stated that he and Johnson could not be housed together. Defendant Smith then extracted a canister of chemical agent and the plaintiff retrieved a cup of toilet water in order to defend himself.

Inmate Johnson's restraints were eventually removed and the plaintiff informed defendants Sterling and Smith that they had failed to search inmate Johnson for weapons. Defendant Sterling responded that he "didn't give a f#$% about that." Defendant Smith stated that he didn't care if the plaintiff and inmate Johnson killed each other, and he and defendant Sterling left.

The plaintiff and inmate Johnson then got into an argument about the human waste fight that had occurred between them, and inmate Johnson punched the plaintiff in the face rendering the plaintiff unconscious. When the plaintiff regained consciousness, the fight resumed, and inmate Johnson cut the plaintiff's arms with a razor blade that was tied to a toothbrush. After a third fight, the plaintiff's cuts were examined by medical.

In response to the plaintiff's allegations, defendant Sterling has asserted that he is entitled to qualified immunity in connection with the plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that the defendant's motion should be denied. Specifically, the Court concludes that the plaintiff stated a claim, against the defendant Sterling, upon which relief may be granted.

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d

1364, 1373 (5th Cir. 1981).  Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law.  *Id.* at 837.  A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Id. at 847*.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.  *Id.* at 837.

Applying the foregoing standard, the Court concludes that the plaintiff has alleged facts sufficient to support a claim that defendant Sterling was deliberately indifferent to a substantial risk of serious harm in failing to protect the plaintiff from his co-inmate.  The plaintiff alleges that both he and inmate Johnson informed defendant Sterling that they could not be housed together due to a prior altercation and could not be placed in a cell together without getting into a fight.  The plaintiff additionally informed defendant Sterling that inmate Johnson was a mental health inmate who cut himself with razor blades.  Despite these warnings from the plaintiff <u>and</u> inmate Johnson, defendant Sterling refused to house inmate Johnson elsewhere.  Furthermore, when the plaintiff informed defendants Sterling and Smith that they had failed to check inmate Johnson for weapons, defendant Sterling responded that he "didn't give a f#$% about that."  As a result of the plaintiff and inmate Johnson being bunked together, the plaintiff was rendered unconscious by a blow to his face and cut on his arms with a razor blade by inmate Johnson.

Accepting the plaintiff's allegations as true, there is a basis for finding that Sterling was subjectively deliberately indifferent to the plaintiff's safety or well-being.  Despite warnings

from the plaintiff and inmate Johnson, defendant Sterling refused to house inmate Johnson in different cell or further conduct further inquiry. In addition, despite being informed that defendant Johnson had a history of cutting himself with razor blades, defendant Sterling merely responded with a flippant response when informed that he failed to search inmate Johnson for weapons.  Accordingly, the plaintiff's amended Complaint contains sufficient facts to state a claim for deliberate indifference to the plaintiff's safety against defendant Sterling.

The moving defendant also asserts that the plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies.  In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[1]  This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'"  *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525.  Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose.  *Id.*

---

[1] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Based on the plaintiff's allegations it is not clear that the plaintiff failed to exhaust his administrative remedies prior to filing his Complaint in this Court as suggested by the defendant. Though the plaintiff states that two of his grievances were rejected upon initial screening, the Court cannot ascertain from his Complaint if these grievances were properly rejected. Additionally, the plaintiff alleges to have filed a third grievance, and on page 3 of his Complaint states that he did not receive a response at the Second Step, which would have allowed the plaintiff to unilaterally proceed with the filing of his suit in this Court. *See* 22 La. ADC, Part I, § 325(J)(1)(c). As such, the Court cannot, at this time, conclude that the plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

## RECOMMENDATION

It is recommended that defendant Sterling's Motion to Dismiss (R. Doc. 16) be denied, and that this matter be referred back the Magistrate Judge for further proceedings herein.

Signed in Baton Rouge, Louisiana, on October 2, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**